UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
In re                               :     Chapter 11
                                    :     Case No. 01-16034 (AJG)
ENRON CREDITORS RECOVERY            :
CORP., *et al.*,                    :     Jointly Administered
         Reorganized Debtors.       :
                                    :
------------------------------------x

**ORDER, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004, AND 9019, (A) AUTHORIZING AND APPROVING THE EXECUTION, DELIVERY, AND PERFORMANCE OF GLOBAL SETTLEMENT AGREEMENT WITH THE CITIGROUP ENTITIES, DELTA, THE INDENTURE TRUSTEE, THE CLN TRUST AGENT AND THE TRUSTS WITH RESPECT TO THE GLOBAL RESOLUTION OF LITIGATION AND CLAIMS, AS SET FORTH THEREIN, (B) BARRING CONTRIBUTION AND INDEMNITY CLAIMS AGAINST CITIGROUP ENTITIES RELEASEES AND (C) AUTHORIZING AND APPROVING THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREBY**

Upon consideration of the motion, dated April 7, 2008 (the "Motion"), of ENE, ENA, ENGMC, EBS, EES, EESH, EII, ESO, ECT, ETSC, EPMI, and ACFI (collectively, "Plaintiffs"), each for and on behalf of itself and its reorganized debtor affiliates (collectively, the "Reorganized Debtor Movants"), for an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019: (a) authorizing and approving the execution, delivery and performance of the Global Settlement Agreement,[1] dated as of April 4, 2008 (the "Global Settlement Agreement"), by and among the Enron Entities, the Citigroup Entities, Delta, the Indenture Trustee, the CLN Trust Agent and the Trusts, (b) barring indemnity and contribution claims against "Citigroup Entities Releasees" (as defined in the Global Settlement Agreement) and (c) authorizing and approving the consummation of the transactions

---

[1]   All capitalized terms not defined herein shall have the meanings ascribed thereto in the Global Settlement Agreement annexed to the Motion as Exhibit A.

contemplated thereby; and the Bankruptcy Court having jurisdiction to consider the Motion and the relief requested therein, pursuant to 28 U.S.C. §§ 157 and 1334 and Article XXXVIII of the Plan; and it appearing that due and proper notice of the Motion and the relief requested therein having been given, and no other or further notice need be given; and all parties in interest having been heard or having been afforded an opportunity to be heard at the hearing held on April 24, 2008 to consider the Motion and the relief requested therein (the "Hearing"); and the relief requested in the Motion being in the best interests of the Reorganized Debtor Movants and the other Debtors and Reorganized Debtors, their respective estates and creditors; and the Bankruptcy Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that the terms and provisions contained in the Global Settlement Agreement are fair and reasonable; and based upon the Motion, the exhibits thereto, the Affidavit of Bonnie J. White, sworn to on April 7, 2008, the evidence adduced and the legal arguments presented at the Hearing and all other proceedings had before the Bankruptcy Court; and after due deliberation thereon and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  The Bankruptcy Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and Article XXXVIII of the Plan. Venue of the Debtors' chapter 11 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  As evidenced by the certificate of service filed with the Bankruptcy Court, proper, timely, adequate and sufficient notice of the Motion and the transactions contemplated thereby, and the Hearing to consider the Motion and the relief requested therein, has been

2

provided to all interested persons and parties in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") and this Court's Second Amended Case Management Order Establishing, Among Other Things, Noticing Electronic Procedures, Hearing Dates, Independent Website and Alternative Methods of Participation at Hearings, dated December 17, 2002, and such notice was good, sufficient and appropriate under the particular circumstances and no other or further notice of the Motion, this Order, or the Hearing is required.

    C.  Pursuant to the MegaClaim Complaint, the Plaintiffs have brought claims (1) against the Financial Institution Defendants (as defined in the MegaClaim Complaint), including the Citigroup Defendants, for damages based upon alleged aiding and abetting fraud, alleged aiding and abetting breach of fiduciary duty, and alleged civil conspiracy; (2) against various Financial Institution Defendants, including certain of the Citigroup Defendants, and other entities, for (a) disallowance and/or equitable subordination of their respective claims against the Enron Entities, and (b) avoidance and recovery of certain transfers and commitments made to the Financial Institution Defendants, including certain of the Citigroup Defendants, by the Plaintiffs and allegedly constituting avoidable transfers; and (3) for an accounting, punitive damages, interest and costs. The MegaClaim Complaint also seeks to equitably subordinate and disallow the Trust Claims. The Citigroup Defendants have filed three separate summary judgment motions to dismiss various counts of the MegaClaim Complaint (the "Citigroup Summary Judgment Motions"). Delta has joined in the Citigroup Summary Judgment Motions. The Trusts have filed a summary judgment motion to dismiss the MegaClaim Complaint (the "Trust Summary Judgment Motion"). Plaintiffs have opposed the Citigroup Summary Judgment Motions and the Trust Summary Judgment Motion, the Citigroup Defendants filed reply papers.

D. By complaint, dated November 11, 2003, styled <u>Enron Corp. v. Citibank, N.A., Citigroup Global Markets, Inc. (formerly Salomon Smith Barney, Inc.), J.P. Morgan Chase Bank and J.P. Morgan Securities, Inc.</u>, Adversary Proceeding No. 03-92701 (AJG) (the "Dynegy Fee Avoidance Adversary"), ENE commenced litigation against certain parties, including certain Citigroup Defendants, asserting claims for, *inter alia*, avoidance and recovery of allegedly preferential and fraudulent transfers made to Citigroup as a result of, or relating to, an engagement letter, dated October 31, 2001, in which, *inter alia*, Salomon Smith Barney agreed to provide financial advisory services to ENE.

E. By complaint dated November 6, 2003, and later amended, styled <u>Enron Corp. v. Goldman Sachs & Co., *et al.*</u>, Adversary Proceeding No. 03-92677 (AJG) (the "CP Action"), ENE commenced litigation against, among others, Citibank, Citi Institutional US Corporation & Mortgage Bond Fund, and Citicorp Investment Management (Luxembourg) S.A. and Banco Nacional de Mexico, asserting claims for, *inter alia,* the avoidance and recovery of allegedly preferential or fraudulent transfers in connection with alleged early redemptions of ENE's commercial paper in October and November 2001, prior to the stated maturity of the commercial paper, and asserting certain objections to claims.

F. By complaint dated December 1, 2003, styled <u>Enron Creditors Recovery Corp. f/k/a Enron Corp., *et al.* v. Citigroup, Inc., *et al.*</u>, Case No. 03-93611 (the "Pipeline Prepay Adversary"), the Committee and the Enron Entities that are parties thereto commenced litigation against Citigroup and others, asserting claims for, *inter alia*, the avoidance and recovery of certain allegedly preferential and fraudulent transfers, disallowance of claims, and equitable subordination of claims asserted by the Citigroup Defendants in connection with a $250,000,000

obligation owed to Citibank by two of the Debtors' formerly wholly-owned subsidiaries, NNG and TPC.

G. Pursuant to that certain Omnibus Objection to Proofs of Claim, dated January 9, 2004 (the "MegaClaim Objection"), the Debtors objected to each of the claims filed by, or on behalf of, certain Citigroup Defendants and certain Trust Entities.

H. Appaloosa, Davidson LTD, Davidson LP, Davidson Partners, Elliott, Liverpool, MHDCO, Palomino and Serena, the Indenture Trustee, and the CLN Trusts (acting by and through the CLN Trust Agent) are plaintiffs in the action captioned <u>Yosemite Securities Trust I, et al. v. Citibank, N.A., et al.</u> (MDL-1446: Civ. No. H-05-1191) currently pending in the United States District Court for the Southern District of Texas (the "Yosemite/CLN Trust Action").

I. By complaint dated January 10, 2005, styled as <u>Enron Creditors Recovery Corp. f/k/a Enron Corp. v. Springfield Associates, L.L.C. and Westpac Banking Corporation</u>, Case No. 05-01025 ("Springfield Adversary"), ENE commenced litigation against Springfield and Westpac seeking to equitably subordinate and/or disallow one or more claims in the approximate amount of $50,000,000 in claims transferred by Citigroup to Westpac and one or more claims in the approximate amount of $5,000,000 in claims transferred by Citigroup to Deutsche and now owned by Springfield.

J. The Citigroup Defendants have denied, and continue to deny, each and all of the claims and allegations of wrongdoing made in the Yosemite/CLN Trust Action, the MegaClaim Litigation, the MegaClaim Objection, the Dynegy Fee Avoidance Adversary, the Springfield Adversary, the CP Action and the Pipeline Prepay Adversary, and maintain that they have meritorious defenses. The Citigroup Defendants have expressly denied, and continue to

deny, all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Yosemite/CLN Trust Action, the MegaClaim Litigation, the MegaClaim Objection, the Dynegy Fee Avoidance Adversary, the Springfield Adversary, the CP Action and the Pipeline Prepay Adversary and the Citigroup Defendants vigorously contend that the factual allegations of the complaints relating to them are inaccurate. The Citigroup Defendants also have denied and continue to deny, *inter alia*, the allegations that the Enron Entities, the Debtors and their estates or their creditors were harmed by any Citigroup Defendant's conduct as alleged in the Yosemite/CLN Trust Action, the MegaClaim Litigation, the MegaClaim Objection, the Dynegy Fee Avoidance Adversary, the Springfield Adversary, the CP Action and the Pipeline Prepay Adversary, or otherwise.

K. The Reorganized Debtors and the Enron Entities have concluded that, because of the substantial expense and risk of litigating the issues associated with the MegaClaim Litigation, the MegaClaim Objection, the Dynegy Fee Avoidance Adversary, the Springfield Adversary, the Pipeline Prepay Adversary and portions of the CP Action as against certain defendants therein, the length of time necessary to resolve each of the issues presented in each of the aforementioned actions, the complexity involved and the concomitant disruption to their efforts to make further distributions contemplated by the Plan, the compromise and settlement provided herein is fair and reasonable, and in the best interests of the Reorganized Debtors, Debtors, the Debtors' estates and their creditors, and the Enron Entities.

L. The Indenture Trustee and the Trusts have expressly denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the MegaClaim Litigation and the MegaClaim Objection, and the Indenture Trustee and the Trusts vigorously

6

contend that the factual allegations set forth in the MegaClaim Litigation and the MegaClaim Objection are materially inaccurate. The Indenture Trustee and the Trusts also have denied and continue to deny, *inter alia*, the allegations that the Enron Entities, the Debtors and their estates or their creditors were harmed by the conduct of the Indenture Trustee and the Trusts, as alleged in the MegaClaim Litigation, the MegaClaim Objection, or otherwise.

M. Delta has denied, and continues to deny, each and all of the claims and allegations of wrongdoing made in the Yosemite/CLN Trust Action and the MegaClaim Litigation, and maintains that it has meritorious defenses. Delta has expressly denied, and continues to deny, all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Yosemite/CLN Trust Action and the MegaClaim Litigation, and Delta vigorously contends that the factual allegations of the complaints relating to it are materially inaccurate. Delta also has denied and continues to deny, inter alia, the allegations that the Enron Entities, the Debtors and their estates or their creditors were harmed by Delta's conduct as alleged in the Yosemite/CLN Trust Action and the MegaClaim Litigation, or otherwise.

N. The Global Settlement Agreement is the product of intensive negotiations, which occurred shortly before the parties advised the Court of the proposed settlement.

O. The negotiations were conducted at arms' length, over an extended period, between very sophisticated parties that were in an adversarial relationship throughout their dealings with each other. All the terms of the settlement are set out in the Global Settlement Agreement. There is no evidence or indication from the terms of the Global Settlement Agreement that it represents or includes any effort by Plaintiffs to secure, or by the Citigroup

Defendants, Delta, the Indenture Trustee, or the Trust Entities to assist Plaintiffs in securing, unfair or inequitable treatment of others against whom Plaintiffs or the other Enron Entities have asserted or may assert claims.

P. The Creditors' Committee, whose term was extended pursuant to Article XXXIII of the Plan for, among other things, the purpose of advising the Reorganized Debtors with respect to the MegaClaim Litigation and other litigations, has had a full and fair opportunity to assess the Global Settlement Agreement.

Q. In the exercise of their reasonable business judgment, the Debtors and Reorganized Debtors, for and on behalf of their respective estates, and after consultation with the Creditors' Committee, fairly determined that (without conceding Plaintiffs' position that the Financial Institution Defendants are subject to joint and several liability) the consideration to be paid by the Citigroup Entities pursuant to the Global Settlement Agreement is fair and reasonable.

R. The compromises and settlements contained in the Global Settlement Agreement are fair and reasonable, and in the best interests of the Debtors, the Debtors' estates and their creditors, and the other Enron Entities and constitute good faith compromises and settlements. The recoveries to the Debtors' estates and to creditors are fair and reasonable and are substantially higher than the lowest point in the range of reasonable litigation outcomes in the absence of the compromises and settlements contained in the Global Settlement Agreement. The Reorganized Debtors and the Debtors have advanced sound and sufficient business justifications, and it is a reasonable exercise of their respective business judgment, to execute, deliver and consummate the Global Settlement Agreement and the transactions contemplated thereby.

S. The Enron Entities reasonably determined to include as a part of the settlement protections in favor of the Citigroup Entities Releasees from the risk of post-settlement exposure to non-settling defendants and others for contribution and indemnity, based upon liability or responsibility, or asserted or potential liability or responsibility, either directly or indirectly of any Person to or for the benefit of any Enron Releasee. The provision of the Global Settlement Agreement affording that protection constitutes a material provision of the Global Settlement Agreement. Neither the Debtors nor any other Person is harmed or disadvantaged by this provision in the context of the other terms of the Global Settlement Agreement.

T. The Enron Entities reasonably determined to include as part of this Order a bar prohibiting any Person from taking any action (other than to enforce the Global Settlement Agreement) against any one or more of the Parties or any of their respective affiliates, members, directors, officers, employees, attorneys, advisors, agents, and representatives, and their successors and assigns, based upon or arising out of any such Party's actions or omissions in good faith in connection with the Global Settlement Agreement, including, without limitation, the negotiation, documentation and execution thereof and the consummation of the transactions contemplated thereby.

U. The consummation of the Global Settlement Agreement and the settlement contemplated thereby, is properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, section 105 of the Bankruptcy Code, and all applicable Bankruptcy Rules, including, without limitation, Bankruptcy Rules 2002, 6004, and 9019, as well as Local Rule 9013-1(c), and all of the applicable provisions of such sections have been complied with in respect thereof.

V. Subject to the entry of this Order, the Reorganized Debtor Movants, directly or indirectly, have the power and the authority to bind each other Debtor, Reorganized Debtor and Enron Entity to the terms of the Global Settlement Agreement or otherwise have been duly authorized by such Debtor, Reorganized Debtor and other Enron Entity to execute and deliver the Global Settlement Agreement on its behalf.

W. The consideration set forth in the Global Settlement Agreement constitutes reasonably equivalent value and fair consideration pursuant to the Bankruptcy Code and applicable state law.

X. The Global Settlement Agreement was proposed, negotiated, and entered into by the parties thereto without collusion and in good faith.

Y. Except as otherwise provided in this Order, no consents or approvals, other than this Order and those expressly provided for in the Global Settlement Agreement, are required for the parties to consummate the transactions contemplated by the Global Settlement Agreement. Without limiting the generality of the foregoing, upon entry of this Order, no further action, approval or consent of any person shall be required to enter into, deliver, perform, and comply with the Global Settlement Agreement.

THEREFORE, IT IS HEREBY ORDERED THAT:

1. The findings of fact and the conclusions of law stated herein shall constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall later be determined to be a finding of fact, it shall be so deemed.

2. The Motion is granted in its entirety.

3. All objections, including, without limitation, any objections interposed at the Hearing, to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are overruled.

4. The Global Settlement Agreement and the transactions contemplated thereby, including, but not limited to, the separate settlements with Springfield and Westpac annexed as Exhibit I to the Global Settlement Agreement, are approved in their entirety pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9019, Local Rule 9013-1(c), Articles XXVIII and XXXVIII of the Plan, and paragraph 60 of the Confirmation Order, with all of the terms, covenants, waivers, releases, duties and obligations set forth in the Global Settlement Agreement incorporated herein and expressly made a part of this Order as if fully set forth herein.

5. The Reorganized Debtor Movants are authorized and directed for themselves and on behalf of each other Debtor, Reorganized Debtor and Enron Entity, pursuant to section 105 of the Bankruptcy Code, Article XXVIII of the Plan and Bankruptcy Rule 9019 to execute and deliver the Global Settlement Agreement, and each of the Debtors, Reorganized Debtors and other Enron Entities are authorized and directed to perform all of their obligations with respect thereto, and to execute and deliver, or cause their respective subsidiaries and affiliates to execute and deliver, such Global Settlement Agreement, and perform all of their obligations with respect thereto and take such other actions as are necessary to effectuate the transactions contemplated thereby.

6. On the Effective Date, the MegaClaim Objection shall be deemed withdrawn, with prejudice, without the need for execution or delivery of additional documents, or the entry of additional or further orders of the Bankruptcy Court.

7. The proposed treatment of each of the claims identified in Article II of the Global Settlement Agreement is hereby approved. As to all claims that are withdrawn, expunged, subordinated, released or subject to any other mechanism that results in claims not being paid, all as identified in Article II of the Global Settlement Agreement, all amounts held in reserve for such claims are hereby released (and all prior orders requiring or providing reserves for such claims are modified, satisfied or vacated by this provision releasing all reserves for such claims). Any orders that provide for reserves attributable to such claims are hereby vacated to the extent that such orders provide for reserves attributable to such claims.

8. Each and every Person, including, without limitation, the CLN Holders and any Person claiming by or through the CLN Holders, shall be forever barred from commencing any cause of action or asserting any claim, whether in law or in equity, direct or indirect, individually or as a class, of whatever kind or nature, whether known or unknown (excepting from the foregoing, but without expanding the Persons entitled to seek such relief, claims or causes of action to enforce, or to seek damages or other appropriate relief resulting from breach of, the Global Settlement Agreement) against any one or more of the Parties or any of their respective affiliates, members, directors, officers, employees, attorneys, advisors, agents, and representatives, and their successors and assigns, based upon or arising out of any such Party's actions or omissions in good faith in connection with this Global Settlement Agreement, including, without limitation, the negotiation, documentation and execution thereof and the consummation of the transactions contemplated thereby.

9. Each and every Person (including, but not limited to, all other Defendants in the MegaClaim Litigation, the Dynegy Fee Avoidance Adversary, the CP Action and the Springfield Adversary) is hereby permanently enjoined, barred and restrained from instituting,

prosecuting or litigating in any manner any claim or action for contribution or indemnity against the Citigroup Entities Releasees and Delta Releasees, based upon liability or responsibility, or asserted or potential liability or responsibility, either directly or indirectly of any Person to or for the benefit of any Enron Releasee arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the MegaClaim Litigation, the Dynegy Fee Avoidance Adversary, the CP Action, the Springfield Adversary, or any other action brought or that might be brought by, through, on behalf of, or for the benefit of the Enron Releasees or any of them (whether arising under federal law, state or foreign law, and regardless of where asserted). Any Person so enjoined, barred and restrained is hereby entitled to a settlement and/or judgment credit in accordance with any applicable statutory or common law rule. The Citigroup Entities Releasees and Delta Releasees are hereby permanently enjoined, barred and restrained from instituting, prosecuting or litigating in any manner any claim or action for contribution or indemnity against each and every Person (including, but not limited to, all other Defendants in the MegaClaim Litigation, the Dynegy Fee Avoidance Adversary, the CP Action and the Springfield Adversary), based upon liability or responsibility, or asserted or potential liability or responsibility, either directly or indirectly of the Citigroup Entities Releasees and Delta Releasees to or for the benefit of any Enron Releasee arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the MegaClaim Litigation, the Dynegy Fee Avoidance Adversary, the CP Action, the Springfield Adversary, or any other action brought or that might be brought by, through, on behalf of, or for the benefit of the Enron Releasees or any of them (whether arising under federal law, state or foreign law, and regardless of where asserted); provided, however, that nothing in this Order shall affect any right of any Person

(including but not limited to the Citigroup Entities Releasees or the Delta Releasees) to contribution or indemnification based upon liability or asserted liability to any creditor of any Enron Entity (other than creditors that are themselves Enron Entities), including but not limited to any right to contribution or indemnification based upon the claims asserted by the plaintiffs in the actions identified in Section 8.5(a) of the Global Settlement Agreement.  This provision shall not be considered, or be deemed in any way, to be a determination or concession by the Plaintiffs as to whether the Financial Institution Defendants are subject to joint and several liability in the MegaClaim Litigation, as to which law is applicable in any manner in the MegaClaim Litigation, or as to whether any particular loss allocation or comparative responsibility statute or common law rule is applicable in any manner in the MegaClaim Litigation.  Nothing contained herein shall limit the rights of any Remaining CP Defendant to obtain discovery from the Citigroup Entities, develop evidence in discovery and/or present evidence or arguments at trial to support a judgment reduction credit that reflects a proportionate share of responsibility, if any, allocable to the Citigroup Entities.  This Order also shall not otherwise limit the rights of any Remaining CP Defendant to defend the CP Action and to assert any substantive or procedural rights provided by applicable law.

10. The Global Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the Parties' mutual agreement thereto, in a writing signed by the Parties, and in accordance with the terms thereof without further order of the Bankruptcy Court; provided, however, that, any such modification, amendment or supplement shall not be material in nature and not change the economic substance of the transactions contemplated hereby.

11. Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Global Settlement Agreement. This Order is and shall be binding upon and shall govern the acts of all such entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect, the consummation of the transactions contemplated by the Global Settlement Agreement.

12. The failure to specifically include any particular provisions of the Global Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Global Settlement Agreement and the transactions contemplated thereby be approved in their entirety and performed in accordance with their terms. Any conflict between the terms and provisions of this Order and the Global Settlement Agreement shall be resolved in favor of this Order.

13. The terms and provisions of the Global Settlement Agreement, together with the terms and provisions of this Order, shall be binding on and inure to the benefit of the Parties to the Global Settlement Agreement, each of the remaining Debtors, Reorganized Debtors and Enron Entities, and their respective estates and creditors, and other parties in interest, and any successors, assigns or affiliates of such persons and entities, including, without limitation, (a) any fiduciary, committee, trustee or examiner now existing or appointed in the future in these

cases or any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code and (b) to the extent not set forth in the Global Settlement Agreement, any purchaser, agent for a purchaser or assignee of any of the Claims. This Order shall also be binding in all respects upon any affected third parties, including, without limitation, those asserting a lien or claim against, or interest in, the Debtors' estates.

14. Notwithstanding anything to the contrary, this Order is not intended to dismiss, release or affect, nor shall it have the effect of dismissing, releasing or affecting, nor shall it be argued or construed as dismissing, releasing or affecting, (a) the claims asserted by the plaintiffs (the "Bank Debt Plaintiffs") in the action captioned DK Acquisition Partners, L.P., *et al.* v. J.P. Morgan Chase & Co., *et al.,* No. 08-CV-0446 (S.D.N.Y.) or other pending actions such as UniCredito Italiano SpA, *et al.* v. JP Morgan Chase Inc., *et al.*, No. 02-CV-5328 (S.D.N.Y.), Avenue Capital Management II, L.P., *et al.* v. J.P. Morgan Chase & Co., *et al.,* No. 08-CV-0447 (S.D.N.Y.) or Westpac Banking Corporation v. Citibank, N.A., Nos. 06-CV-1465, 06-CV-1785 (S.D. Tex.), or (b) claims in the Debtors' chapter 11 cases (other than claims 99057, 14196 and 14179 or such new claim numbers as are assigned pursuant to Section 2.2(b) of the Global Settlement Agreement) that are held or asserted by the Bank Debt Plaintiffs.

15. The provisions of this Order are nonseverable and mutually dependent.

16. The 10-day stay imposed pursuant to Bankruptcy Rule 6004(g) shall not be in effect, and this Order shall be effective and enforceable immediately upon entry. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay or risk such appeal being foreclosed as moot in the event the parties elect to close the transactions contemplated by the Global Settlement Agreement prior to this Order becoming a final order.

17. No person or entity shall take any action to prevent, enjoin or otherwise interfere with the consummation of the Global Settlement Agreement.

18. The requirement set forth in Rule 9013-1(b) of the Local Rules that any motion or request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion.

19. The Bankruptcy Court shall retain jurisdiction in accordance with Article XXXVIII of the Plan and paragraph 60 of the Confirmation Order to hear and determine all matters arising from the interpretation, implementation and enforcement of this Order, the Global Settlement Agreement and any disputes arising from, and all documents executed, in connection therewith.

Dated: New York, New York
      April 24, 2008

                                         **s/Arthur J. Gonzalez**_____
                                         HONORABLE ARTHUR J. GONZALEZ
                                         UNITED STATES BANKRUPTCY JUDGE